IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Mark N., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 3:22-cv-50102 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mark N. brings this action under 42 U.S.C. § 405(g) seeking a remand of the decision denying him disability insurance benefits.[1] For the reasons set forth below, the Commissioner's decision is reversed, and the case is remanded.

**I. Background**

Plaintiff filed an application for a period of disability and disability insurance benefits on September 26, 2016, alleging a disability beginning on December 20, 2015, because of lumbar degenerative disc disease, lumbar spine discectomy, post-stroke cognitive problems, encephalomalacia, and learning disabilities. R. 85.

A hearing on Plaintiff's application was held before administrative law judge Kevin Plunkett ("the prior ALJ") on October 19, 2018. R. 30. The prior ALJ issued a partially unfavorable decision, concluding that Plaintiff was not disabled between his alleged onset date and January 2018 but that Plaintiff became disabled on his 55th birthday in January 2018, when his age category changed from "closely approaching advanced age" to "advanced age." R. 29–30 (citing

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 5.

1

20 C.F.R. § 404.1563). As detailed further below, this Court reversed and remanded the unfavorable portion of the prior ALJ's decision. *Mark N. v. Saul*, No. 19 CV 50261, 2021 WL 1222873 (N.D. Ill. Apr. 1, 2021). On July 16, 2021, the Appeals Council remanded the case to ALJ Lee Lewin (the ALJ) for further proceedings consistent with the Court's order. R. 1623.

On remand, the ALJ held a hearing on Plaintiff's application on December 14, 2021. R. 1509. The ALJ heard testimony from Plaintiff, impartial medical expert Michael A. Lace, Psy.D., and an impartial vocational expert. R. 1509. On December 29, 2021, the ALJ issued a written decision finding that Plaintiff was not disabled between his alleged onset date and his 55th birthday in January 2018. R. 1523. The ALJ found that Plaintiff had the following severe impairments:

> degenerative disc disease of the lumbar spine, status post hemilaminotomy and microdiscectomy; history of cerebral vascular accident, coronary artery disease, and non-ST-elevation myocardial infarction (NSTEMI); major neurocognitive disorder due to vascular disease; borderline intellectual function; unspecified neurocognitive disorder, generalized anxiety disorder; and a history of alcohol and cocaine use disorder.

R. 1511–12. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 1512–15. The ALJ then found that Plaintiff had the residual functional capacity (RFC) to perform light work with certain restrictions. R. 1515. The ALJ determined that Plaintiff could not return to his past work as a carpenter or plumber, but there were a significant number of jobs that existed in the national economy that Plaintiff could perform, such as hand packager, cashier, or housekeeping cleaner. R. 1521–22.

Pursuant to 20 C.F.R. § 404.984, the ALJ's decision became the final decision of the Commissioner after remand. Thereafter, Plaintiff filed the instant action. Dkt. 1.

2

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## III. Discussion

Plaintiff argues that: (1) the ALJ failed to properly analyze the opinion of neuropsychological examiner Colin A. Brietzke, Psy.D.; (2) the ALJ violated SSR 96-8p by omitting off-task time from the RFC; and (3) the ALJ's subjective symptoms evaluation violated SSR 16-3p. As in the Court's prior opinion, the Court again concludes that the analysis of Dr. Brietzke's opinion is deficient and warrants remand.

**A. The Court's Prior Opinion**

Because the Court described the facts of this case at length in its prior opinion, the Court will only summarize the medical opinions that form the basis of the Court's decision. *See generally*

*Mark N.*, 2021 WL 1222873. The Court previously described Dr. Brietzke's 11-page report as follows:

> In October 2016, Dr. Brietzke conducted an interview with Plaintiff and administered numerous tests, which measured a variety of cognitive abilities. Dr. Brietzke diagnosed Plaintiff with Major Neurocognitive Disorder Due to Vascular Disease, Borderline Intellectual Functioning, Generalized Anxiety Disorder, and Alcohol Use Disorder (Moderate). R. 1087. Dr. Brietzke determined that Plaintiff's intellectual ability was likely to be a substantial limiting factor to his ability to function without assistance and maintain employment, and that his IQ had likely declined since his stroke. R. 1086. He noted that Plaintiff's intellectual deficits limited his ability to discern differences in his functioning before and after his strokes, and that he was a poor informant, despite making apparent efforts to answer all interviewer questions. R. 1090. Dr. Brietzke wrote that both testing and conversation revealed Plaintiff did not recognize his substantial level of impairment. R. 1090. Dr. Brietzke concluded that Plaintiff's previous cognitive functioning was in the low average range and his current measurement was within the borderline range, representing a decline in functioning. R. 1091. Dr. Brietzke concluded his report with 11 different recommendations, including: that Plaintiff follow up with his physician to better understand the impact of his health on his cognitive functioning and risk of future heart attack or stroke; that Plaintiff's reported unilateral weakness be assessed by a neurologist; that Plaintiff is cognitively unable to perform in the same capacity as he had in previous employment, and would have distinct challenges learning a new, more menial job; that Plaintiff continue to pursue social security benefits; and that Plaintiff would do best in an employment position with limited and consistent demands. R. 1094–97.

*Id.* at *3 (footnote omitted). Dr. Brietzke opined that Plaintiff was "unlikely to recover sufficient [sic] following his strokes to function in work settings other than sheltered settings," his "language functioning, emotional functioning, persistence, attention and pace, [we]re all within the markedly impaired range," and his "[d]aily living skills [we]re estimated to be within the impaired range." R. 1095. Plaintiff claims, and the Commissioner does not refute, that "Dr. Brietzke opined to work-preclusive limitations." Pl.'s Br. at 9, Dkt. 11. In other words, the prior ALJ could find Plaintiff capable of work only if the prior ALJ properly discounted Dr. Brietzke's opinion.

4

The prior ALJ summarized Dr. Brietzke's opinion as follows:

> Dr. Brietzke opined the claimant could not perform in the same capacity as he had previously in terms of employment, and found his reasoning, ability to learn and benefit from supervisorial feedback and understand written/spoken instructions were all deficient to the point that he was likely to have trouble learning a new, more menial job [R. 1085–1101]. He also found the claimant would likely have cognitive difficulties learning new tasks even in unskilled labor, and that his fatigue, poor spatial orientation, poor planning/organization and lack of motor dexterity would likely make consistent job performance "nearly impossible." The undersigned assigns this opinion little weight, as it is entirely inconsistent with all other evidence in the record regarding the claimant's mental abilities and limitations, such as his generally intact mental status examinations and residual daily activities.

R. 28. The Court extensively addressed the flaws in this analysis in its prior opinion, noting that it was both inadequately explained and contradicted by significant evidence in the record that supported Dr. Brietzke's opinion. *Mark N.*, 2021 WL 1222873, at *6–13. The Court also provided the ALJ on remand with five explicit directions.

First, with respect to Plaintiff's daily activities, the Court explained the deficiencies in the prior ALJ's analysis and instructed that "[o]n remand, the ALJ should bear in mind that the Seventh Circuit has frequently cautioned against likening a plaintiff's daily activities to the tasks one might be assigned in a full-time job." *Mark N.*, 2021 WL 1222873, at *10.

Second, with respect to the prior ALJ's assertion that Dr. Brietzke's opinion was "entirely inconsistent with all other evidence in the record," the Court listed several instances in the record where the evidence appeared consistent with Dr. Brietzke's opinion regarding Plaintiff's memory problems, ability to work, and ability to learn. *Id.* at *11–12. The Court instructed that "[o]n remand, the ALJ should consider these apparent consistencies in [her] evaluation of Dr. Brietzke's opinion." *Id.* at *12.

5

Third, the Court noted that "there [wa]s no evidence that the [prior] ALJ sufficiently accounted for the kinds and extent of examinations and testing that Dr. Brietzke performed." *Id.* The Court instructed that "[o]n remand, the ALJ should discuss this relevant factor in [her] analysis." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)(ii)).

Fourth, the Court found that there was no evidence that the prior ALJ considered other relevant regulatory factors "including Dr. Brietzke's knowledge of Plaintiff's impairments, . . . the relevant evidence Dr. Brietzke presented to support his opinion, and the consistency with the record as a whole." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)(ii)–(c)(4)). The Court instructed that, "[o]n remand, the ALJ should discuss and consider these relevant factors in [her] evaluation of Dr. Brietzke's opinion." *Id.*

Fifth and finally, the Court instructed that "[b]ecause the reason for remanding this case is the [prior] ALJ's evaluation of Dr. Brietzke's opinion, on remand the ALJ should consider re-visiting the RFC limitations with a fresh eye and should, with the help of an appropriate medical expert, consider the cumulative effect of all the alleged impairments and limitations." *Id.* at *13.

**B. The ALJ's Decision**

On remand, the ALJ summarized Dr. Brietzke's opinion as follows:

> In his neuropsychological examination discussed above, Dr. Brietzke found that the claimant has "markedly impaired" language functioning, emotional functioning, and persistence, attention, and pace abilities, and impaired living skills [R. 1095]. He further found that the claimant's decreased cognitive functioning would likely prevent him from performing his previous jobs, and that he is unlikely to recover sufficiently to function in work setting other than sheltered work settings [R. 1095]. Dr. Brietzke's opinion is given partial weight. His finding that the claimant is likely no longer able to perform his former jobs is well supported and consistent with the record evidence. However, the medical expert testified at the hearing that the overall record does not support Dr. Brietzke's assessment of the claimant's functional limitations. For example, the record shows that the claimant has had numerous encounters with

6

> different treatment providers, from emergency room physicians to specialists with no reports or notes of communication problems, problems understanding, explaining, focusing or following conversations [R. 1357, 1383; 1404, 1410, 1416; 1421]. His assessment of the claimant's limitations is also inconsistent with the claimant's testimony of being able to manage his personal care, do light housework, shop independently, drive, attend his appointments, and communicate effectively with his providers.

R. 1520. Plaintiff argues that this analysis is no better than the prior ALJ's analysis and violates the law of the case doctrine, because the ALJ did not follow this Court's remand order, as well as the ALJ's obligation to articulate her consideration of Dr. Brietzke's opinion under 20 C.F.R. § 404.1527(c).[2] The Court agrees that another remand is required.

**C. The ALJ's Analysis of Dr. Brietzke's Opinion**

The ALJ provided three reasons for assigning little weight to Dr. Brietzke's opinion, but none holds up to scrutiny. This Court could not have been clearer that "the reason for remanding this case [wa]s the [prior] ALJ's evaluation of Dr. Brietzke's opinion." *Mark N.*, 2021 WL 1222873, at *13. Despite the Court's clear instructions, the ALJ did not properly address the relevant regulatory factors in 20 C.F.R. § 404.1527(c)(2)(ii)–(c)(4); did not address the evidence the Court cited regarding Plaintiff's memory problems, ability to work, and ability to learn that appeared consistent with Dr. Brietzke's opinion; and did not provide an analysis of Plaintiff's daily activities that complied with Seventh Circuit precedent. This was reversible error.

**1. Dr. Lace's Opinion**

The ALJ's first reason for discounting Dr. Brietzke's opinion was that "[Dr. Lace] testified at the hearing that the overall record does not support Dr. Brietzke's assessment of the claimant's functional limitations." R. 1520. The ALJ gave Dr. Lace's testimony great weight because "[h]e

---

[2] 20 C.F.R. § 404.1527(c) applies to applications, like Plaintiff's, that were filed before March 27, 2017.

7

supported his opinion with a thorough discussion of the relevant evidence, and his opinion is consistent with the record as a whole." R. 1520. Plaintiff argues that the ALJ erred by rejecting Dr. Brietzke's opinion based on Dr. Lace's opinion. In support, Plaintiff cites *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003), for the proposition that "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." Plaintiff notes that under 20 C.F.R. § 404.1527(c)(1), more weight is generally given to the opinion of an examining source than a non-examining source.

The Commissioner responds that Plaintiff's argument is contrary to law and that "a medical expert's opinion, standing alone, constitutes substantial evidence, even when weighed against a treating source opinion."[3] Def.'s Br. at 8, Dkt. 14. But Plaintiff is not claiming that a medical expert's opinion can *never* constitute substantial evidence in the face of an examining physician's opinion; rather, Plaintiff is arguing that the ALJ can reach this conclusion only when the ALJ provides reasons supported by substantial evidence. The Court agrees with Plaintiff that the ALJ's reasons are inadequate.

The Seventh Circuit has held that an ALJ must "provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). Here, the ALJ's explanation amounts to conclusory assertions that Dr. Brietzke's assessment is not supported by the overall record and that Dr. Lace's opinion is supported by a thorough discussion of the relevant evidence and is consistent with the record as

---

[3] The Commissioner points out that "Dr. Brietzke conducted a one-time consultative examination and, thus, was not a treating medical source." Def.'s Br. at 7, Dkt. 14. However, the fact that Dr. Brietzke was not a *treating* medical source does not detract from Plaintiff's arguments, which rest on the fact that Dr. Brietzke was an *examining* source. *See Gudgel*, 345 F.3d at 470 (referring to "an examining physician's opinion"); 20 C.F.R. § 404.1527(c)(1) (referring to "the medical opinion of a source who has examined you").

8

a whole. These conclusory assertions do not even minimally articulate the ALJ's reasoning and thus provide the Court with no logical bridge from the evidence to the ALJ's conclusions.

While the ALJ asserts that Dr. Lace's opinion is supported by a thorough discussion of the relevant evidence, the ALJ fails to acknowledge that Dr. Brietzke's opinion is supported by a thorough discussion of the relevant evidence in the form of an 11-page report. And as the Court explained in its prior opinion, significant record evidence does support Dr. Brietzke's assessment of Plaintiff's functional limitations, including Plaintiff's 2016 function report; the notes of Plaintiff's treating physicians and a physical therapist; the opinion of the agency's consultative examiner Julie Young, Psy.D.; and Plaintiff's testimony at the first hearing.[4] *Mark N.*, 2021 WL 1222873, at *11–12. As such, the ALJ's sweeping statement that "the overall record does not support Dr. Brietzke's assessment of the claimant's functional limitations," like the prior ALJ's statement that Dr. Brietzke's opinion was entirely inconsistent with the record, is not supported by substantial evidence. *See id.* at *12. Because the ALJ failed to provide a valid explanation supported by substantial evidence for crediting Dr. Lace's opinion over Dr. Brietzke's, the ALJ's decision was erroneous and must be reversed.

**2. Plaintiff's Encounters with Treatment Providers**

The ALJ's next reason for discounting Dr. Brietzke's opinion was that "the record shows that the claimant has had numerous encounters with different treatment providers, from emergency room physicians to specialists with no reports or notes of communication problems, problems understanding, explaining, focusing or following conversations [R. 1357, 1383; 1404, 1410, 1416; 1421]." R. 1520.

---

[4] Plaintiff offered similar testimony at the second hearing. *See* R. 1555–70.

Plaintiff argues that this reason is invalid because Plaintiff's ability to interact with doctors does not translate to an ability to work, citing *Crump v. Saul*, 932 F.3d 567, 571 (7th Cir. 2019), for the proposition that "paying attention for a structured, relatively short mental health examination is altogether different than a full day at a competitive workplace with sustained demands." Pl.'s Br. at 5, Dkt. 11. Plaintiff further argues that the ALJ "did not explain how anecdotal evidence of [Plaintiff's] ability to communicate with medical providers was more probative than valid, objective neuropsychological testing." *Id.* at 7. The Court agrees that, without further explanation, it is unclear how the ALJ translated Plaintiff's ability to communicate with medical providers into a conclusion that he could meet the demands of full-time work, particularly in light of Dr. Brietzke's neuropsychological testing.

The Commissioner does not address these arguments except to broadly defend the ALJ's analysis, claiming that the ALJ "reasonably concluded that if plaintiff's limitations rose to the marked level, the contemporaneous medical records or plaintiff's activities would provide evidence of that." Def.'s Br. at 6, Dkt. 14. The problem with this claim is that the contemporaneous medical records *do* provide evidence that supports Dr. Brietzke's opinion, as the Court explained in its prior opinion. *Mark N.*, 2021 WL 1222873, at *11. Plaintiff's physical therapist referred to Plaintiff as a poor historian and noted that he would have difficulty learning and applying knowledge, Plaintiff frequently could not remember the names of his medications and treatments, Dr. Young found that Plaintiff had impairment in memory functioning, and Plaintiff reported to an ER doctor that he might have difficulty learning to manage his diabetes. *Id.* As such, the ALJ's reasoning, in addition to being inadequately explained, is unsupported by substantial evidence and must be reversed.

### 3. Plaintiff's Activities of Daily Living

The ALJ's final reason for discounting Dr. Brietzke's opinion was that it is "inconsistent with [Plaintiff's] testimony of being able to manage his personal care, do light housework, shop independently, drive, attend his appointments, and communicate effectively with his providers." R. 1520. The Court found an even more detailed explanation inadequate in its prior opinion, explaining that the prior ALJ erred by failing to explain *how* Plaintiff's activities are inconsistent with Dr. Brietzke's opinion, including by failing to acknowledge the limitations or accommodations that allowed him to perform those activities. *Mark N.*, 2021 WL 1222873, at *8–10. For instance, with respect to Plaintiff's housework, shopping, and driving, the Court noted that "Plaintiff's engagement in these activities appears to be so minimal or infrequent that it would not contradict" Dr. Brietzke's opinion regarding "Plaintiff's ability to sustain attention, concentrate, and exert mental control." *Mark N.*, 2021 WL 1222873, at *9. Without belaboring the point, the Court finds that the ALJ committed the same error as the prior ALJ and for the same reasons. The Court again cautions the ALJ on remand against likening Plaintiff's daily activities to the tasks he might be assigned in a full-time job. *Id.* at *10 (collecting cases).

Because the ALJ failed to provide a valid explanation, supported by substantial evidence, for discounting Dr. Brietzke's opinion, the Court again remands the case for a proper analysis of Dr. Brietzke's opinion. In doing so, the ALJ must comply with the Court's directions in its prior opinion as well as this opinion.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this opinion.

Date: September 28, 2023        By:    _Lisa A. J_____
                                                  Lisa A. Jensen
                                                  United States Magistrate Judge